No. 18,866.

J. J. SCHAFFNER, *Appellee,* v. THE ESTATE OF JOHN
SCHAFFNER et al., *Appellants.*

##### HEADNOTE BY THE REPORTER.

1. WIFE—*Communications with Deceased Husband—Competent
Evidence.* In an action by a son to establish a claim against
his father's estate, the wife of the deceased husband is com-
petent to testify as to statements made to her by the de-
ceased about the claim.

2. OPINION EVIDENCE—*Incompetent.* In an action to establish a
claim against an estate the witness was permitted to state
"whether in her opinion the claim was just and should be
allowed." *Held,* reversible error.

Appeal from Sedgwick district court, division No. 1;
THOMAS C. WILSON, judge. Opinion filed June 6, 1914.
Reversed.

*John W. Adams,* and *George W. Adams,* both of
Wichita, for the appellants.

*S. B. Amidon, D. M. Dale,* and *Jean Madalene,* all of
Wichita, for the appellee.

*Per Curiam:* The deceased, father of the appellee,
left a will giving all his property, real and personal, to
his wife for her life; then, at her death, to be divided
equally among his five children. The will was duly
probated and the widow, Elizabeth Schaffner, was ap-
pointed executrix thereof.

Thereafter the appellee, a son of the deceased and of
the executrix, filed a bill against the estate, claiming
that, at the request of his father, he quit employment as
a farm hand, where he had steady employment at
thirty dollars per month, and came home and worked
for his father for nine years; that the father agreed
that if he would do so and do the general farm work
necessary, the father would give the appellee a part of
the farm; that he diligently worked and managed for

his father for nine years, and has received no compensation or settlement therefor; that the father before his death willed all his property, real and personal, to his widow during her lifetime and at her death to his children; that the will makes no extra allowance for the services of the claimant; that the claimant's services were worth thirty dollars per month. He prayed judgment for $3200. The bill was disallowed by the probate court and the costs taxed to the appellee.

The case was appealed to the district court and tried therein. The executrix did not appear in the action and failed to appear on subpœna as a witness therein. Notice, however, was given, and her deposition was taken, and numerous objections are made to the questions and answers therein.

In the deposition the witness testified to various statements which she says her husband made in his lifetime. Many of the questions and answers do not indicate whether the statement had been made by her husband to her or whether she had overheard the statement in his conversation with another. The following question was asked her: "Did you hear your husband say he was entitled to $30 per month?" The answer was, "That is what he told me. He said Jack was worth $30 per month and he said he would have to have it if he asked for it, but as long as he did not ask for it he would get it when he died." This question and answer was repeated one or more times, and from the connection it might be fairly inferred that all that she had heard her husband say about the matter was in conversations and communications between them as husband and wife. Proper objections were made to the foregoing questions and answers on the ground that it developed a conversation between husband and wife while that relation existed. The witness was clearly not incompetent to testify to what her husband

had told her.   Part of section 321 of the civil code reads:

"The following persons shall be incompetent to testify:   .   .   .   Third, husband and wife, for or against each other, concerning any communication made by one to the other during the marriage, whether called while that relation subsisted or afterward."

The question did not tend to elicit any evidence for or against the deceased husband.   He was not a party to the action and his interest in the matter had, upon his decease, passed to others.   The restriction of the statute is to be strictly construed.   (*Higbee v. McMillan,* 18 Kan. 133; *Lanning v. Gay,* 70 Kan. 353, 78 Pac. 810, 85 Pac. 407.)

Again, the following question was asked: "In your opinion is the claim of Jack against the estate of John Schaffner just and should it be allowed?" The objection that it was incompetent, calling for a conclusion of the witness, was overruled on the ground that no written objection had been filed.   The answer was as follows, "Yes, sir; it is; he earned it all, and it is just and should be allowed, and the people who are now fighting it are the people who left the place and refused to help my husband.   Jack saved it for us and he is the only one that did the work; the rest refused to work.   Jack is entitled to everything he claims.   He did all the work and worked hard and is entitled to thirty dollars per month and nothing has been paid to him.   The money that Jack made was paid on the mortgage and the indebtedness against the farm.   My husband was not able to pay him anything in his lifetime, but said Jack should get it when he died.   I think Jack's claim is just.   He worked hard and kept the farm up. . Raised the crops and harvested them and sold them and delivered the money to my husband and my husband used it in paying off the indebtedness. Jack saved the farm and we would not have it if it had not been for him."

By implication, section 362 of the civil code provides that the objection of incompetency and irrelevancy may be made on the trial and without written objection filed before the trial. It follows that the reason stated by the court for overruling the objection is not good. The question, however, called for opinion evidence, which is usually incompetent, except in cases where expert evidence is proper, and it does not appear that this was a proper case therefor. The opinions given by the witness in this case involved the very conclusion the jury was impaneled to try, and are incompetent. The fact of her relationship to the parties and her knowledge of their transactions rendered her evidence especially prejudicial to the appellants.

The judgment is reversed and the case is remanded for a new trial.